UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
--------------------------------------------------------------------X
KENNETH HOGAN,

                   Petitioner,

          - against -

ROBERT E. ERCOLE,
Superintendent-Green Haven Correctional Facility[1],

                  Respondent.
--------------------------------------------------------------------X

                                                     **MEMORANDUM & ORDER**
                                                  05-CV-5860 (RRM)

**MAUSKOPF, United States District Judge.**

       Pending before this Court is Kenneth Hogan's *pro se* petition for a writ of habeas corpus

pursuant to 28 U.S.C. § 2254.  Petitioner seeks relief from his 2002 conviction in New York

State Supreme Court, Nassau County, for murder in the second degree under New York Penal

Law ("N.Y.P.L.") § 125.23(3); two counts of robbery in the first degree under N.Y.P.L. §

160.15(1), (2); and criminal possession of a weapon in the second degree under N.Y.P.L. §

265.03.  He was sentenced to concurrent terms of twenty-five years to life on the murder

conviction, twenty-five years with five years post-release supervision for each robbery

conviction, and fifteen years with five years post-release supervision for the weapon conviction.

       Hogan's petition asserts ten grounds in support of his application: (1) the jury's verdict

was against the weight of the evidence and the evidence presented against him was not legally

sufficient to establish his guilt; (2) he was denied his Fifth Amendment right to due process and

his Sixth Amendment right to a fair trial when the prosecutor elicited evidence of his "silence,"

failed to correct the testimony of a witness, and made improper remarks during summation; (3)

---

[1] Petitioner is currently incarcerated at Green Haven Correctional Facility, but he has not named the superintendent as the respondent.  He improperly names as respondent the People of the State of New York.  *DeSousa v. Abrams*, 467 F. Supp. 511, 512 (E.D.N.Y. 1979).  Petitioner is directed to name Robert E. Ercole, Superintendent of Green Haven Correctional Facility, as the respondent in future filings.

the court erred in admitting a written statement by co-defendant Carl Badger, who was tried separately, because it violated the Confrontation Clause of the Sixth Amendment; (4) the court's jury charge on "flight" was erroneous and denied him his Sixth Amendment right to a fair trial; (5) his statements were illegally obtained or taken in violation of his state right to counsel; (6) the sentence should be reduced as excessive; (7) the prosecutor's opening statement departed from the indictment, denying petitioner due process guaranteed by the Fifth Amendment and a fair trial guaranteed by the Sixth Amendment; (8) defense counsel's ineffective assistance violated  the Sixth Amendment, due to counsel's failure to investigate, locate, and present potential witnesses, his denial of petitioner's opportunity to testify on his own behalf, and his failure to present a defense requested by petitioner and request appropriate jury instructions; (9) entitlement to a new trial because he never received *Miranda* warnings at the time of his arrest, violating his Fifth Amendment right against self-incrimination and his Sixth Amendment right to effective assistance of counsel; and (10) Alternate Juror No. 1, who replaced Juror No. 3, should have been dismissed for cause, and the court's failure to do so denied defendant his right to due process guaranteed by the Fifth Amendment and his right to a fair trial guaranteed by the Sixth Amendment.  (Pet. for Writ of Habeas Corpus ("Habeas Pet.") (Doc No. 1); Appellant's Br. at i-iii, June 2003.)[2]

For the reasons set forth below, the petition is DENIED in its entirety.

---

[2] While this petition has been under consideration, petitioner has written numerous letters to the court, none of which contain any substance relevant to the merits of the instant petition. (*See* Doc. Nos. 15 -74, 78 – 95.) Petitioner has also sought the appointment of counsel (Doc. No. 77), which is hereby denied as the court finds that the instant petition lacks substance.  *Cooper v. Sargenti*, 877 F.2d 170 (2d Cir. 1989).  Finally, in a letter dated March 1, 2011 (Doc. No. 75), petitioner indicates that he has become aware of alleged improprieties in the Nassau County police laboratory and alleges that there is "strong reason to believe that the evidence in [his] case was tainted." (Doc. No. 75.)  Petitioner requests an investigation.  For the reasons set forth in respondent's letter in opposition (Doc. No. 76), including petitioner's failure to raise these claims in a state forum, these claims are not properly raised for the first time on habeas review.

# BACKGROUND

## I.     INDICTMENT

Indictment No. 2191/00 charged petitioner and his co-defendant, Carl Badger, with murder in the second degree, two counts of robbery in the first degree, and criminal possession of a weapon in the second degree.  (Appellant's Br. at 2.)  The indictment charged that petitioner and his co-defendant committed these crimes on April 28, 2000, in Nassau County.  (*Id.*)  As alleged, on or about April 29, 2000, petitioner and Badger shot their friend, Henry Hambrite, while he was seated in his car in front of the co-defendant's home, and took money from his person.  (*Id.*)  Petitioner and his co-defendant were arrested and tried separately.  (*Id.*)

## II.    TRIAL[3]

At trial, eyewitnesses testified that petitioner and his co-defendant were with Hambrite on the night of April 28, and that petitioner and his co-defendant saw Hambrite counting a large sum of money.  (Resp't's Aff. & Mem. of Law (Doc. No. 7) at 2; Trial Tr. 435-38, 443-46, 449-50, 457, 482-502, 516, 519, 526-33, 535-39, 542-47, 552-57, 563-64, 1125-31.)  Taryn Davis, a friend of Hambrite's who also knew Badger and petitioner, testified that she saw Hambrite at 1:40 a.m. in the driver's seat of his car, with Badger next to Hambrite and petitioner in the back seat.  (Trial Tr. at 481-84.)  Davis testified that she saw petitioner through the car's tinted side window but acknowledged on cross-examination that she saw a shadow, and it was dark.  (*Id.* at 484, 535, 537, 542.)  Davis testified that Hambrite, Badger, and petitioner were all wearing bubble jackets, although she had previously stated that only Hambrite and Badger were in bubble jackets and that petitioner wore a black hooded sweatshirt.  (*Id.* at 490, 494.)

---

[3] State Court trial transcripts, as well as briefs to the State Court, were submitted largely in hard copy as voluminous exhibits. These files are a matter of public record and may be found in the Office of the Clerk of Court.

Police Officer Steven Horowitz testified that, on April 28, 2000, at about 2:15 a.m., he heard 4 to 5 gunshots approximately one-and-a-half blocks from his location.  (*Id.* at 582-85.) He testified that when he arrived at the scene, the passenger door of the car was open, Hambrite was slumped over the steering wheel with his pants pockets inside out, the driver's side window was shattered, the passenger seat was pulled forward, and there were spent shell casings outside the passenger door.  (*Id.* at 582-86, 588-90.)  Officer Horowitz testified that he spoke to Badger at his front door within two minutes of hearing the shots and saw petitioner on the staircase within ten feet of Badger.  (*Id.* at 590-91.)  James O'Melia of the Nassau County Police Department Emergency Ambulance Bureau testified that when he arrived at the crime scene at 2:20 a.m., the deceased had no pulse and had an entry wound in his back.  (*Id.* at 459-61.)

Detective Dennis Downes of the Nassau County Police, Crime Scene Search Section, testified that he used a gunshot residue kit to test the hands of both Badger and petitioner.  (*Id.* at 369-72.)  The prosecution presented forensic evidence that particles on the hands of both petitioner and Badger were consistent with gunshot residue.  (*Id.* at 671-72, 684, 691-93, 696, 700-02, 707-08.)  Detective Carl Bruno of the Scientific Investigation Bureau testified that gunshot residue can be on the hand of a shooter or somewhere near the shooter, that gunshot residue can get onto the hand of a person who handles a gun that has just been fired, and that particles can be distributed if the hands are rubbed.  (*Id.* at 634-35, 637-38, 684-85.)  Bruno testified that the chemicals on Badger's hands and on petitioner's hands were consistent with firing a weapon, but the particles may or may not have been from a firearm, and Badger could have transferred the particles to petitioner.  (*Id.* at 691-92, 696, 711.)

Detective Robert Nemeth of the Nassau County Police Scientific Investigation Bureau testified that the four bullets removed from Hambrite's body were all fired from the same

weapon, and that weapon was found in the wall of Badger's house.  (*Id.* at 942-44, 995, 991-1000.)  Doctor Gerard Catanese, a forensic pathologist, testified that four gunshot wounds to Hambrite's back in a right to left direction was the cause of death.  (*Id.* at 469, 473, 480.)

The month following the murder, Detective William Brosnan of the Homicide Squad testified that Badger was arrested in Albany, where he and petitioner had traveled subsequent to Hambrite's murder.  (*Id.* at 772.)  Petitioner was not arrested at this point, but rather fled to Memphis, Tennessee, where he was arrested on September 14, 2000.  (*Id.* at 772.)  Brosnan testified that petitioner was read his rights and agreed to give an oral statement, during which petitioner stated that he knew the police had probable cause for his arrest and did not need a warrant, that he had fled Albany because he had drugs in his possession at the time, and that Badger was the one who shot Hambrite.  (*Id.* at 772, 774, 776-78.)

Approximately four months after petitioner's arrest, the District Attorney's office received a letter purportedly written by Badger absolving petitioner of any guilt.  The parties stipulated that petitioner's blood matched evidence obtained on the envelope.  (*Id.* at 964.)  Detective John Schaefer testified that petitioner's fingerprints were on the letter.  (*Id.* at 979, 982.)  Meghan Clement, a Director of Forensic Identity for LabCorp in North Carolina, testified that DNA on the glue flap of the envelope was consistent with petitioner's DNA profile.  (*Id.* at 1104-22.)

## III.   CONVICTION AND SENTENCING

Petitioner was convicted of all counts following a jury trial on May 14, 2002.  On June 19, 2002, petitioner was sentenced to a term of twenty-five years to life for murder in the second degree, twenty-five years with five years post-release supervision for each robbery in the first degree count, and fifteen years with five years post-release supervision for criminal possession of

a weapon.  All terms of imprisonment and post-release supervision were to run concurrently.

(Appellant's Br. at 20.)  Petitioner was also required to pay restitution by civil judgment in the

amount of $2,893 on behalf of New York State Crime Victims Board, a $200 surcharge, and a

$10 crime victims' assistance fee.  (Sentencing Mins. at 9-11.)

## IV.    DIRECT APPEAL

Petitioner appealed his conviction to the Supreme Court of the State of New York,

Appellate Division, Second Department ("Appellate Division").  He alleged that:  (1) the jury's

verdict was against the weight of the evidence and the evidence presented against him was not

legally sufficient to establish his guilt; (2) he was denied his Fifth Amendment right to due

process and his Sixth Amendment right to a fair trial when the prosecutor elicited evidence of his

"silence," failed to correct the testimony of a witness, and made improper remarks during

summation; (3) the court erred in admitting a written statement by co-defendant Badger, who

was tried separately, because it violated the Confrontation Clause of the Sixth Amendment; (4)

the court's jury charge on "flight" was erroneous and denied him his Sixth Amendment right to a

fair trial; (5) his statements were illegally obtained or taken in violation of his state right to

counsel; (6) the sentence should be reduced as excessive; (7) the prosecutor's opening statement

departed from the indictment, denying petitioner due process guaranteed by the Fifth

Amendment and a fair trial guaranteed by the Sixth Amendment; (8) defense counsel's

ineffective assistance caused extreme prejudice in violation of the Sixth Amendment, due to

counsel's failure to investigate, locate, and present potential witnesses, his denial of petitioner's

opportunity to testify on his own behalf, and his failure to present a defense requested by

petitioner and request appropriate jury instructions; (9) entitlement to a new trial because he

never received *Miranda* warnings at the time of his arrest in contravention of the Fifth

Amendment right against self-incrimination and Sixth Amendment right to effective assistance of counsel; and (10) the failure to dismiss Alternate Juror No. 1 for cause denied defendant his Fifth Amendment right to due process and his Sixth Amendment right to a fair trial. (Appellant's Br. at i-iii.)

On September 27, 2004, the Appellate Division affirmed petitioner's conviction. *People v. Hogan*, 781 N.Y.S.2d 915, 915 (App. Div. 2004). The Appellate Division held that the proof of petitioner's guilt was legally sufficient, the verdict was not against the weight of the evidence, and all of petitioner's remaining contentions were meritless. *Id.*

Subsequent to the Appellate Division's affirmation, petitioner sought leave to appeal. On December 23, 2004, the New York Court of Appeals denied leave to appeal. *People v. Hogan*, 4 N.Y.3d 744 (2004).

## V.    MOTION TO VACATE

Following the sentencing, petitioner moved the state court for an order vacating his judgment of conviction pursuant to New York Criminal Procedure Law ("N.Y.C.P.L.") § 440.10. (Habeas Pet. at 4.) In support of his motion, petitioner claimed that he was not advised of his constitutional rights when he was arrested and that the prosecutor improperly changed the theory of the case at trial from that which he had presented before the grand jury. Petitioner additionally alleged that his attorney was ineffective because he did not present certain witnesses and did not permit petitioner to testify at trial. (*Id.*) By order dated April 10, 2003, the state court denied petitioner's motion pursuant to N.Y.C.P.L § 440.10(2)(b), on the procedural ground that sufficient facts appeared on the record concerning the grounds raised to permit adequate review of the claims on direct appeal. (Resp't's Aff. & Mem. of Law (Doc. No. 7) at 2-3.)

In a motion dated August 25, 2005, petitioner again moved the state court for an order vacating his judgment of conviction pursuant to N.Y.C.P.L. § 440.10, on the ground that his attorney was ineffective because he failed to advise petitioner whether to accept or reject a plea bargain.  By order dated December 9, 2005, the court denied petitioner's motion pursuant to N.Y.C.P.L. § 440.10(3)(c), on the procedural ground that petitioner was in a position to raise his claim in his previous motion to vacate judgment but failed to do so.  (*Id.* at 3.)

Leave to appeal to the Appellate Division from the April 10, 2003 order of the state court was denied on July 8, 2003.  (Habeas Pet. at 5.)

## VI.    POST-CONVICTION PROCEEDINGS

On December 8, 2005, petitioner filed this petition seeking a writ of habeas corpus pursuant to 28 U.S.C. § 2254.  Petitioner raises the same ten claims that he raised on appeal. (*See* Habeas Pet.)

## <u>APPLICABLE LAW</u>

## I.    STANDARD OF REVIEW UNDER 28 U.S.C. § 2254(d)(1)

In deciding a federal habeas corpus petition, the Court must apply the standard of review set forth by the Antiterrorism and Effective Death Penalty Act ("AEDPA").  AEDPA requires a rigorous standard of review with regard to petitions filed by state prisoners.  *See Williams v. Taylor*, 529 U.S. 362, 402-03 (2000).  Under AEDPA:

> (d) An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim –
>
>> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

> (2) . . . was based on an unreasonable determination of the facts in
> light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d)(1)-(2).  Though the "contrary to" and "unreasonable application" clauses of § 2254(d)(1) are analyzed independently, both limit the source of the "clearly established law" to the jurisprudence of the Supreme Court.  *Williams*, 529 U.S. at 404–05, 412; *see also Howard v. Walker*, 406 F.3d 114, 122 (2d Cir. 2005) (quoting *Kennaugh v. Miller*, 289 F.3d 36, 42 (2d Cir. 2002)).

A state court "adjudicates a state prisoner's federal claim on the merits when it (1) disposes of the claim on the merits, and (2) reduces its disposition to judgment."  *Sellan v. Kuhlman*, 261 F.3d 303, 312 (2d Cir. 2001) (citation and internal quotation marks omitted). "When a state court does so, a federal habeas court must defer in the manner prescribed by 28 U.S.C. § 2254(d)(1) to the state court's decision on the federal claim – even if the state court does not explicitly refer to either the federal claim or to relevant federal case law."  *Id.*  This is because "federal courts recognize a conclusive presumption that, when presented with an express federal claim, a state court's decision rests principally upon an application of federal law even absent any express reference to federal authority."  *Reznikov v. David*, No. 05 Civ. 1006, 2009 WL 424742, at *3 (E.D.N.Y. 2009) (citing *Sellan*, 261 F.3d at 314).

The Supreme Court has noted that a state court decision will be "contrary to" established Supreme Court precedent if "the state court applies a rule that contradicts the governing law set forth in [Supreme Court] cases" or if a state court "confronts a set of facts that are materially indistinguishable from a decision of [the Supreme] Court and nevertheless arrives at a result different from [Supreme Court] precedent."  *Williams*, 529 U.S. at 405-06.

Further, the Supreme Court has held that, with respect to the "unreasonable application" clause, a federal court may grant a petitioner's writ of habeas corpus "if the state court identifies

the correct governing legal rule from [the Supreme] Court's cases but unreasonably applies it to the facts of the particular state prisoner's case." *Id.* at 413.  The state court's application, however, must be "objectively unreasonable," *id.* at 409-10, a "higher threshold" than "incorrect." *Knowles v. Mirzayance*, 129 S. Ct. 1411, 1420 (2009).  Moreover, if a federal court "finds that the state court engaged in an unreasonable application of established law, resulting in constitutional error, it must next consider whether such error was harmless." *Howard*, 406 F.3d at 122 (citing *Brecht v. Abrahamson*, 507 U.S. 619, 629-30 (1993)).

AEDPA requires that federal courts treat state court adjudication with great deference. *Brown v. Artuz*, 283 F.3d 492, 500 (2d Cir. 2002).  This deference is warranted "even if the state court decision does not explicitly refer to either the federal claim or to relevant federal case law." *Stellan*, 261 F.3d at 312.  Moreover, this standard extends to factual determinations made by the state court: "a determination of a factual issue made by a State court shall be presumed to be correct." 28 U.S.C. § 2254(e)(1).  The petitioner can only rebut this presumption of correctness with clear and convincing evidence. *Parsad v. Greiner*, 337 F.3d 175, 181 (2d Cir. 2003).

The "unreasonable determination" inquiry under 2254(d)(2) has also been elucidated by the Supreme Court:  "an *unreasonable* application of federal law is different from an *incorrect* application of federal law." *Williams*, 529 U.S. at 410 (emphasis in original).  A state court's application of federal law must be "objectively unreasonable." *Id.* at 409.  This is even more stringent a requirement than clear error, which can be distinguished from unreasonableness for the purposes of this inquiry. *See Lockyer v. Andrade*, 538 U.S. 63, 75 (2003).  Indeed, the Second Circuit has required "some increment of incorrectness beyond error," *Francis S. v. Stone*, 221 F.3d 100, 111 (2d Cir. 2000), noting that though "[s]ome increment of incorrectness beyond error is required . . . the increment need not be great; otherwise, habeas relief would be limited to

state court decisions so far off the mark as to suggest judicial incompetence." *Jones v. Stinson*,

229 F.3d 112, 119 (2d Cir. 2000) (citations and internal quotation marks omitted).

## II.    THE EXHAUSTION REQUIREMENT

Section 2254 codifies an exhaustion requirement, providing that a federal habeas court

may not grant "[a]n application for a writ of habeas corpus . . . unless it appears that — (A) the

applicant has exhausted the remedies available in the courts of the State . . . ."  28 U.S.C. §

2254(b)(1)(A); *see also Rose v. Lundy*, 455 U.S. 509, 515–16, 518 (1982) ("The exhaustion

doctrine existed long before its codification [in 28 U.S.C. § 2254] by Congress in 1948" and is

"designed to protect the state courts' role in the enforcement of federal law and prevent

disruption of state judicial proceedings.").  In the Second Circuit, courts must follow a two-step

exhaustion analysis:

> First, the petitioner must have fairly presented to an appropriate
> state court the same federal constitutional claim that he now urges
> upon the federal courts . . . Second, having presented his federal
> constitutional claim to an appropriate state court, and having been
> denied relief, the petitioner must have utilized all available
> mechanisms to secure [state] appellate review of the denial of that
> claim.

*Klein v. Harris*, 667 F.2d 274, 282 (2d Cir. 1981); *see also* 28 U.S.C. § 2254(c).

In order to "fairly present" a constitutional claim, a federal habeas petitioner must alert

the state appellate court that a federal constitutional claim is at issue.  *See, e.g.*, *Grady v. Lefevre*,

846 F.2d 862, 864 (2d Cir. 1988); *Rodriguez v. Sabourin*, 274 F. Supp. 428, 433 (S.D.N.Y. 2003).

The Second Circuit, sitting *en banc*, has further stated:

> [T]he ways in which a state defendant may fairly present to the
> state courts the constitutional nature of his claim, even without
> citing chapter and verse of the Constitution, include (a) reliance on
> pertinent federal cases employing constitutional analysis, (b)
> reliance on state cases employing constitutional analysis in like
> fact situations, (c) assertion of the claim in terms so particular as to

> call to mind a specific right protected by the Constitution, and (d)
> allegation of a pattern of facts that is well within the mainstream of
> constitutional litigation.

*Daye v. Attorney Gen. of New York*, 696 F.2d 186, 194 (2d Cir. 1982) (en banc), *cert. denied*, 464

U.S. 1048 (1984).

## III.    ADEQUATE AND INDEPENDENT STATE GROUND DOCTRINE

The Supreme Court has noted that the "adequate and independent state ground doctrine

applies on federal habeas" such that "an adequate and independent finding of procedural default

will bar federal habeas review of the federal claim, unless the habeas petitioner can show cause

for the default and prejudice attributable thereto, or demonstrate that failure to consider the

federal claim will result in a fundamental miscarriage of justice." *Harris v. Reed*, 489 U.S. 255,

262 (1989) (citations and internal quotation marks omitted); *see also Lee v. Kemna*, 534 U.S.

362, 376 (2002) ("Ordinarily, violation of firmly established and regularly followed state rules

. . . will be adequate to foreclose review of a federal claim." (citation and internal quotation

omitted)); *Murray v. Carrier*, 477 U.S. 478, 485 (1986); *Messiah v. Duncan*, 435 F.3d 186, 195

(2d Cir. 2006) ("Federal courts considering habeas corpus petitions are generally barred from

reviewing the decisions of state courts insofar as those decisions are predicated on adequate and

independent state grounds.")  Thus, a federal court may not entertain a procedurally barred claim

"absent a showing of cause and prejudice to excuse the default," or unless the petitioner "can

demonstrate actual innocence of the substantive offense." *Dretke v. Haley*, 541 U.S. 386, 387-88

(2004) (citing *Murray*, 477 U.S. at 496).

In order to show "cause" for a default, a habeas petitioner must demonstrate that "some

objective factor external to the defense" prevented the petitioner from presenting the claim.

*Coleman v. Thompson*, 501 U.S. 722, 753 (1991).  Where a petitioner has failed to demonstrate

cause, the court need not address the issue of prejudice.  *Rivera v. Artus*, No. 04 Civ. 5050, 2007 U.S. Dist. LEXIS 79345, *20 (E.D.N.Y. Oct. 25, 2007); *see also Stepney v. Lopes*, 760 F.2d 40, 45 (2d Cir. 1985) ("[W]e need not, in light of our conclusion that there was no showing of cause, reach the question of whether or not [the petitioner] showed prejudice.").  If the petitioner does establish cause, the petitioner must then demonstrate "prejudice" by showing that "'there is a reasonable probability' that the result of the trial would have been different" had the alleged constitutional violation not occurred.  *Strickler v. Greene*, 527 US 263, 289 (1999) (quoting *Kyles v. Whitley*, 514 U.S. 419, 434 (1995)).

The "fundamental miscarriage of justice" exception to a procedural bar provides relief for those "rare" and "extraordinary" cases in which a habeas petitioner is able to establish his actual innocence and show that the claimed error led to his conviction.  *Schlup v. Delo*, 513 U.S. 298, 321 (1995) (citing *Murray*, 477 U.S. at 496).  "Explicitly tying the miscarriage of justice exception to innocence thus accommodates both the systemic interests in finality, comity, and conservation of judicial resources, and the overriding individual interest in doing justice in the 'extraordinary case.'"  *Id.*

## DISCUSSION

### I.   APPOINTMENT OF COUNSEL

Petitioner has requested that he be appointed counsel.  A habeas corpus petitioner does not have a constitutional right to counsel.  *Green v. Abrams*, 984 F.2d 41, 47 (2d Cir. 1993).  In determining whether to appoint counsel, courts first look at "whether the indigent's position seems likely to be of substance."  *Hodge v. Police Officers*, 802 F.2d 58, 61 (2d Cir. 1986).  If that requirement is met, courts consider "the indigent's ability to investigate the crucial facts, whether conflicting evidence implicating the need for cross-examination will be the major proof

presented to the fact finder, the indigent's ability to present the case, the complexity of legal issues," or any other criteria that would lean in favor of appointing counsel. *Hodge*, 802 F.2d at 61-62. The Court finds that appointment of counsel is not warranted in this case because the petition can be resolved on the written submissions. *See Lawson v. Taylor*, No. 10 Civ. 0477 (JS), 2011 WL 839509, at *1 (E.D.N.Y. Mar. 2, 2011) (declining to appoint counsel to a habeas corpus petitioner "because the issues . . . do not appear to require extensive fact investigation and it seems Petitioner's case will likely be resolved on written submissions"). Therefore, petitioner's request for the appointment of counsel is denied.

## II.   SUFFICIENCY OF THE EVIDENCE

Petitioner claims that the jury's verdict was against the weight of the evidence and that the evidence was legally insufficient to establish guilt because "the evidence presented by the People was all subject to differing inferences." (Appellant's Br. at 23.)

A claim that the jury's verdict was against the weight of the evidence is not a proper basis for a habeas corpus claim. *Estelle v. McGuire*, 502 U.S. 62, 63 (1991) ("[I]t is not the province of a federal habeas court to reexamine state-court determinations on state-law questions. In conducting habeas review, a federal court is limited to deciding whether a conviction violated the Constitution, laws, or treaties of the United States."); *Correa v. Duncan*, 172 F. Supp. 2d 378, 381 (E.D.N.Y. 2001) ("A "weight of the evidence" argument is a pure state law claim grounded in N.Y.C.P.L. § 470.15(5), whereas a legal sufficiency claim is based on federal due process principles."). Accordingly, petitioner's claim that the jury's verdict was against the weight of the evidence is denied.

A claim that evidence was not legally sufficient to establish guilt may serve as a proper basis for a habeas corpus claim because it implicates the Fourteenth Amendment's due process

clause. *Correa*, 172 F. Supp. 2d at 381.  To prevail on a claim that the evidence was legally

insufficient to establish guilt, petitioner must establish that no rational trier of fact could have

found the essential elements of the crimes beyond a reasonable doubt. *Ponnapula v. Spitzer*, 297

F.3d 172, 179 (2d Cir. 2002) ("In a challenge under 28 U.S.C. § 2254 to the evidentiary

sufficiency of a state criminal conviction, we review the evidence in the light most favorable to

the State and the applicant is entitled to habeas corpus relief only if no rational trier of fact could

find proof of guilt beyond a reasonable doubt based on the evidence adduced at trial.").  Under

AEDPA, a petitioner must also demonstrate that the Appellate Division's decision finding the

evidence to be legally sufficient was "contrary to, or involved an unreasonable application of,

clearly established Federal law" or that it "was based on an unreasonable determination of the

facts in light of the evidence presented in the State court proceeding."  28 U.S.C. § 2254(d)(1)-

(2).

Petitioner contends that all of the evidence presented against him could support an

inference of either guilt or innocence.  (Appellant's Br. at 23.)  While this contention may very

well be correct, it does not establish that the court's decision was "contrary to, or involved an

unreasonable application of, clearly established Federal law" or that it "was based on an

unreasonable determination of the facts in light of the evidence presented in the State court

proceeding."  28 U.S.C. § 2254(d)(1)-(2).  Merely asserting that, in this case, "any trier of fact

would . . . necessarily be required to accept that inference which leads to innocence rather than

guilt" does not suffice.  (Appellant's Br. at 23.)  The People's evidence – including eyewitness

testimony that petitioner was with the deceased on the night of his death, particles consistent

with gunshot residue found on petitioner's hands, petitioner leaving the area after the murder,

and petitioner forging a letter that would exculpate him – could reasonably have led the

Appellate Division to find that the evidence was legally sufficient to support petitioner's conviction.  Petitioner's claim that the evidence was not legally sufficient to establish guilt thus fails on the merits.  *See, e.g.*, *Jackson v. Virginia*, 443 U.S. 307, 326 (1979) (A "federal habeas corpus court faced with a record of historical facts that supports conflicting inferences must presume . . . that the trier of fact resolved any such conflicts in favor of the prosecution, and must defer to that resolution."); *Wheel v. Robinson*, 34 F.3d 60, 66 (2d Cir. 1994); *Cebalos v. Artuz*, No. 97 Civ. 2509 (FB), 2001 WL 13258, at *6-9 (E.D.N.Y. Jan. 5, 2001).

## III.    ALLEGED PROSECUTORIAL MISCONDUCT

### A.  Petitioner's Silence

Petitioner claims that the prosecutor improperly elicited evidence of petitioner's post-arrest silence in violation of his Fifth Amendment right to due process and his Sixth Amendment right to a fair trial.  (Appellant's Br. at 24-25.)  Petitioner's claim must fail, as he was properly administered the *Miranda* warnings and his post-arrest statements were found admissible at a pre-trial hearing.

The use of a defendant's post-arrest silence may violate due process and the privilege against self-incrimination.  *Brecht v. Abrahamson*, 507 U.S. 619, 629-30 (1993); *Doyle v. Ohio*, 426 U.S. 610, 617-18 (1976); *Grigg v. Phillips*, 401 F. App'x 590, 593 (2d Cir. 2010).  However, once an arrestee waives his right to remain silent, the government is entitled to introduce evidence at trial of the arrestee's silence in response to questions, and the government may comment on that silence during summation, as long as the arrestee did not resurrect and assert his right to remain silent.  *See United States v. Pitre*, 960 F.2d 1112, 1125 (2d Cir. 1992) ("[U]nless [petitioner] resurrected and asserted his right to remain silent, the government was entitled to introduce this evidence at trial and comment on it during summation.").

At trial, Detective Severin testified that that petitioner was silent when asked why he had not turned himself in to the Albany police and when asked why he told his family that he was going to Virginia and went to Tennessee instead.  (Trial Tr. at 1024.)  However, prior to trial, the court determined that petitioner was properly read his *Miranda* rights by the Nassau County Police Department and that he waived his right to remain silent, thus finding admissible his post-arrest statements to Detective Severin.  (Hr'g Op. & Order at 12, Sept. 20, 2001.)  As such, that defendant declined to answer some questions is not constitutionally protected.

Findings of fact by state courts in the context of habeas corpus claims are "presumed to be correct."  28 U.S.C. § 2254(e)(1).  Petitioner bears "the burden of rebutting the presumption of correctness by clear and convincing evidence."  *Id.*  He does not offer any evidence at all to rebut that presumption; accordingly, the hearing court's finding that petitioner did receive his *Miranda* rights and waived his right to remain silent stands.  *See Sumner v. Mata*, 449 U.S. 539, 546-53 (1981).

Subsequent to the *Miranda* warning, petitioner spoke about the day of the murder and his travels to Albany and Tennessee, thus waiving his right to remain silent under *Miranda*.  (Trial Tr. at 772-80, 860-74, 882, 1018-24, 1075-80, 1095.)  *See Pitre*, 960 F.2d at 1125 (holding that a petitioner who received *Miranda* warnings and then made statements during the post-arrest interview waived his right to remain silent).  There is no indication in the record that petitioner attempted to reassert his right to remain silent; he answered all other questions, remaining silent only for these two.  (Trial Tr. at 772-80, 860-74, 882, 1018-24, 1075-80, 1095.)

Since petitioner waived his right to remain silent, the prosecutor did not err in eliciting testimony about petitioner's silence in response to two questions posed by Detective Severin.

*See Pitre*, 960 F.2d at 1125.  Accordingly, petitioner's claim that the government violated his Fifth and Sixth Amendment rights by eliciting such testimony is denied.

B.  Prosecutor's Summation

Petitioner claims that the prosecutor violated his Sixth Amendment right to a fair trial by commenting during summation on petitioner's silence in response to two post-arrest questions. (Appellant's Br. at 27.)  During summation, the prosecutor reminded jurors that appellant was silent in response to the question of why he did not turn himself in to the Albany police and the question of why he told his family he was going to Virginia but went to Tennessee instead. (Trial Tr. at 1290.)  Since "the government was entitled to introduce this evidence at trial and comment on it during summation," as explained *supra*, petitioner's claim regarding the use of this evidence during summation fails.  *Pitre*, 960 F.2d at 1125.

Petitioner also claims that the prosecutor violated his Sixth Amendment right to a fair trial because the "prosecutor's summation was . . . inflammatory and improper for other reasons." (Appellant's Br. at 27.)  Petitioner objects to the following remarks made by the prosecutor during summation:

> 1) Credibility is not up to me.  Credibility is not up to Mr. Groder. It's not even up to Judge Honorof.  Credibility is up to you.  It's up to you to decide whether the person Taryn Davis, the person Bill Brosnan, the person Rich Gould, the person Dan Severin, is so immoral, evil and wicked that they sat up on that witness stand, looked you right in the eyes and perjured themselves in a truly diabolical effort to convict an innocent man of crimes he never committed.  (Trial Tr. at 1255.)

> 2) They're fabricating testimony to get this defendant.  They're willing to do almost anything, including perjuring themselves, to get this defendant.  (Trial Tr. at 1241.)

> 3) Let's look at Officer Horowitz.  There's a prime conspirator. (Trial Tr. at 1241.)

To prevail on a claim based on a prosecutor's summation, a petitioner must show that the misconduct caused "substantial prejudice" and "so infect[ed] the trial with unfairness as to make the resulting conviction a denial of due process." *Darden v. Wainwright*, 477 U.S. 168, 181 (1986). Here, the prosecutor was wholly appropriate in his use of the evidence during summation, and well shy of that required to offend due process.

The Appellate Division found that this claim failed on the merits. Under AEDPA, a petitioner must demonstrate that the Appellate Division's decision that the prosecutor's summation did not violate petitioner's right to a fair trial was "contrary to, or involved an unreasonable application of, clearly established Federal law" or that it "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d)(1)-(2). Petitioner submits no evidence that the Appellate Division made such a decision aside from a conclusory statement that the remarks were "improper comments" and a feeling that "the prosecutor, through his sarcasm, was denigrating the defense arguments." (Appellant's Br. at 28.)

The Appellate Division did not unreasonably apply federal law or base its decision on an unreasonable determination of the facts. The Supreme Court has held that "a criminal conviction is not to be lightly overturned on the basis of a prosecutor's comments standing alone." *United States v. Young*, 470 U.S. 1, 11 (1985). When analyzing whether a prosecutor's summation "unfairly prejudiced the defendant," a court should consider the defense's comments and assess whether the prosecutor's comments actually prejudiced the defendant or whether they were simply an invited response. *Id.* at 12; *see also Lawn v. United States*, 355 U.S. 339, 359 n.15 (1958). Here, defense counsel questioned the prosecutions' witnesses' credibility in his

summation, and the prosecutor was duty-bound to address that credibility in his summation, albeit through sarcasm.  (Trial Tr. at 1190, 1192, 1196, 1204, 1220, 1241, 1255.)  The prosecutor's comments, and even use of sarcasm, simply did not rise to the level of egregiousness required to overturn the verdict.  Fed. R. Crim. P. 52(b); *United States v. Frady*, 456 U.S. 152, 163 (1982) (to overturn a verdict, the trial must have been "infected with error so 'plain' the trial judge and prosecutor were derelict in countenancing it."); *United States v. DeAlesandro*, 361 F.2d 694, 697 (2d Cir. 1966) (finding that it was not improper for prosecutor "to state that in order to acquit the defendant, the jury would have to find [witnesses] to be perjurers"); *Summa v. Plescia*, No. 07 Civ. 4668 (ARR), 2008 WL 1818794, at *8 (E.D.N.Y. Apr. 22, 2008) (holding that it was proper for the prosecutor to attempt to rehabilitate his witnesses' credibility after it was attacked by defense counsel).  Petitioner is unable to show that the prosecutor's summation actually prejudiced him or that the Appellate Division unreasonably applied federal law or based their decision on an unreasonable determination of the facts.  Petitioner's claim is accordingly denied.

C.  Prosecutor's Alleged Failure to Correct Testimony

Petitioner claims "that there was a significant error which the prosecutor failed to correct and which the prosecutor relied upon to bolster his arguments in summation."  (Appellant's Br. at 28.)  Petitioner refers specifically to inconsistencies in Davis's testimony during Badger's trial, in which Davis testified that Hambrite, Badger, and Hogan were all wearing "big bubble jackets," in contrast to Davis's testimony at petitioner's trial that petitioner was wearing a black hooded sweatshirt, not a bubble jacket.  (Appellant's Br. Ex. A, at 42; Trial Tr. at 494.) Petitioner claims this discrepancy bolsters the testimony at petitioner's trial of Kenny Price, who testified that, from his window located across the street from Badger's house and Hambrite's car,

he saw a person wearing a denim jacket seconds after the gun shots.  (Trial Tr. at 1139, 1159-60, 1163.)

Petitioner claims that the prosecutor did not correct Davis or question her about this discrepancy.  He further maintains that in summation, the prosecutor argued that because Davis testified that petitioner was the only one of the three not wearing a bubble jacket, the prosecutor theorized that petitioner had to be the person that Price saw from his window.  (Appellant's Br. at 29.)

There is no dispute that Davis testified differently at petitioner's trial than she did at Badger's.  (Appellant's Br. Ex. A at 42; Trial Tr. at 494.)  It is not clear which of these statements is incorrect, nor is it clear whether Davis intended to be untruthful.  It is thus uncertain whether Davis committed perjury, which requires willfully forsaking an oath by making statements about "material matter which he does not believe to be true."  18 U.S.C. § 1621(1).  Similarly, the prosecutor did not "know or should have known" that Davis was committing perjury, since it is unclear whether the witness was perjuring herself or not – though, of course, the prosecutor's failure to mention the inconsistency in Davis' statements is unsettling. *United States v. Agurs*, 427 U.S. 97, 103 (1976) (holding that if a prosecutor knew or should have known of perjured testimony, a conviction obtained by using that testimony is "fundamentally unfair, and must be set aside if there is any reasonable likelihood that the false testimony could have affected the judgment of the jury").

Petitioner has not put forward evidence showing that the prosecutor purposefully used false testimony from Davis, and even were he able to do so, the Appellate Division's decision that petitioner's claim is meritless would stand.  In deciding whether a conviction should be set aside "when a prosecutor elicits testimony that he or she knows to be false, or allows such

21

testimony to go uncorrected," the Court must determine: "(1) whether false testimony was introduced, (2) whether that testimony either was or should have been known to the prosecution to be false, (3) whether the testimony went uncorrected, and (4) whether the false testimony was prejudicial in the sense defined by the Supreme Court in *Agurs*." *Shih Wei Su v. Filion*, 335 F.3d 119, 126-27 (2d Cir. 2003). In this case, it is not clear whether Davis' testimony at petitioner's trial was false or whether the testimony was known or should have been known by the prosecutor to be false. (Appellant's Br. at 30.) However, given the a plethora of convincing evidence against petitioner – including other eyewitness testimony that petitioner was with the deceased on the night of his death, particles consistent with gunshot residue found on petitioner's hands, petitioner leaving the area after the murder, and petitioner's forgery of an exculpatory letter – there is likely not "any reasonable likelihood that the false testimony could have affected the judgment of the jury." *Agurs*, 427 U.S. at 103.

Under AEDPA, a petitioner must demonstrate that the Appellate Division's decision finding the false testimony claim to be meritless was "contrary to, or involved an unreasonable application of, clearly established Federal law" or that it "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d)(1)-(2). Petitioner has not carried that burden. Accordingly, this claim is denied.

C.  Change in Theory

Petitioner claims that the prosecutor theorized to the grand jury that petitioner was the principal actor in the crime, but, at trial, the prosecutor theorized that petitioner was more an accomplice than the principal actor. (Appellant's *Pro Se* Supplemental Br. at 24-25.) Petitioner claims that the differing theories denied him due process guaranteed by the Fifth Amendment

and a fair trial guaranteed by the Sixth Amendment.  (*Id.* at 23.)  Petitioner's claim is without merit.

First, there was no significant variance between the prosecutor's theory at the indictment stage and at the trial stage.  The indictment alleges that petitioner and his co-defendant committed the crimes "individually and aiding and abetting and being aided and abetted by one another." (Resp't's Aff. & Mem. of Law at 34.)  The prosecutor's theory at trial that petitioner robbed Hambrite and that Badger shot Hambrite is consistent with the indictment.  (Trial Tr. at 321-22.)

Moreover, under AEDPA, petitioner must demonstrate that the Appellate Division's decision finding petitioner's claim of a differing prosecution theory between the indictment and the trial to be meritless was "contrary to, or involved an unreasonable application of, clearly established Federal law" or that it "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding."  28 U.S.C. § 2254(d)(1)-(2).  Because the theory in the indictment and the theory at trial are consistent, petitioner fails to meet that burden.  As such, this claim is denied.

## IV.    CO-DEFENDANT'S WRITTEN STATEMENT

Petitioner claims that the court improperly admitted into evidence a redacted copy of a written statement and accompanying rights card signed by petitioner's co-defendant in violation of petitioner's Fifth Amendment right to due process and his Sixth Amendment right of confrontation.  (Appellant's Br. at 31.)  Petitioner acknowledges that "the statement of the co-defendant itself was not admitted," but asserts that "the admission of the testimony regarding the rights card and reference to a lengthy statement made by Carl Badger[] left an impression with

the jurors that the co-defendant had somehow implicated [petitioner] in the crimes charged."
(*Id.*)

It is uncontroverted that the only part of the written statement and rights card admitted was co-defendant's signature and the detective's signature; the rest was redacted.  (Resp't's Aff. & Mem. of Law at 23.)  The purpose of admitting the redacted written statement and accompanying rights card was to demonstrate what Badger's signature looked like, as compared to the signature that was forged to look like Badger's signature on a letter purportedly written by co-defendant, exculpating petitioner from any responsibility for Hambrite's murder and robbery. (*Id.* at 24.)

There is nothing in the record from which to infer that the co-defendant implicated petitioner.  At trial, the prosecutor merely asked Detective Brosnan if Badger signed the rights card and statement form in the detective's presence, when and where the signing took place, and whether the exhibit was a fair and accurate photocopy of Badger's signature.  (Trial Tr. at 754-56.)

Even petitioner agrees (*see* Appellant's Br. at 31) that no statement was admitted, just a signature for the purpose of handwriting analysis.  *See Douglas v. Alabama*, 380 U.S. 415, 418-20 (1965) (holding that defendant's inability to cross-examine a co-defendant after the prosecutor read a statement by that co-defendant confessing to the crime violated defendant's Sixth Amendment right of confrontation); *see also Lee v. Illinois*, 476 U.S. 530, 542-43 (1986) (affirming *Douglas*); *Holland v. Scully*, 797 F.2d 57, 66 (2d Cir. 1986) (following *Lee*); *Cotto v. Mann*, 991 F. Supp. 124, 131 (E.D.N.Y. 1998) (holding that it violates the Confrontation Clause to admit "a nontestifying co-defendant's confession when the defendant has not himself confessed").  Since no statement by a co-defendant was actually admitted, petitioner has not

shown that the Appellate Division's decision finding that admission of co-defendant's statement did not violate petitioner's rights was "contrary to, or involved an unreasonable application of, clearly established Federal law" or that it "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d)(1)-(2). Accordingly, this claim is denied.

## V.   THE JURY CHARGE

Petitioner claims that the particular wording of the jury charge regarding consciousness of guilt violated his Sixth Amendment right to a fair trial. (Appellant's Br. at 33.) In particular, he argues that the trial court's instruction regarding consciousness of guilt was prejudicial because it did not feature a summary of the conduct manifesting the consciousness-of-guilt, and did not include petitioner's explanation for that conduct. (*See id.* at 37.)

Since the Appellate Division ruled on the merits of the jury instruction claim, it must be assessed according to the deferential standard of review established by 28 U.S.C. § 2254(d)(1). As noted *supra*, this section only applies to questions of federal law. Section 2254(d)(1) requires that a federal habeas court review only issues of law that are "contrary to" or "an unreasonable application" of federal law. *See* 28 U.S.C. § 2254(d)(1)-(2); *Williams v. Taylor*, 529 U.S. 362, 405-06, 413. The legal sufficiency of a jury charge in a state trial is ordinarily an issue of state law. *United States ex rel. Smith v. Montanye*, 505 F.2d 1355, 1359 (2d Cir. 1974); *Ayala v. Walsh*, No. 05 Civ. 1497 (JS), 2009 WL 4282034, at *8 (E.D.N.Y. Nov. 23, 2009). A federal habeas court does not "reexamine state-court determinations on state-law questions." *Estelle v. McGuire*, 502 U.S. 62, 62 (1991).

Petitioner has not shown that the trial court's deviation was contrary to or an unreasonable application of federal law as would warrant habeas relief. Though he

acknowledges that the jury charge on consciousness of guilt was "in basic conformity with CJI 9.16," he merely objects to the wording because "the trial court strayed from the standard jury instructions when it failed to state what the evidence of flight was as suggested by the recommended jury charge in CJI 9.16[,] which provides an area for inclusion of that information into the charge." (*Id.*) This section allows, but does not require, a court to marshal the prosecution's evidence against petitioner. Petitioner has failed to identify clearly established Supreme Court precedent that would vindicate his claim, or show how that precedent was unreasonably applied to his claim of error. Thus, this issue does not present a question of federal law and is therefore not subject to federal review in the instant habeas petition.

Even if there were a federal violation, habeas corpus generally will not lie because of an irregularity or insufficiency of jury instructions absent a deprivation of constitutional rights. *Lau v. Goord*, 540 F. Supp. 2d 399, 407 (E.D.N.Y. 2008); *see also Casillas v. Scully*, 769 F.2d 60, 63 (2d Cir. 2001); *Davis v. Strack*, 270 F.3d 111, 123 (2d Cir. 2001). Constitutional error is harmless absent a "substantial and injurious effect or influence in determining the jury's verdict." *Brecht v. Abrahamson*, 507 U.S. 619, 627 (1993); *Lau*, 540 F. Supp. 2d at 407. Where an error in a jury instruction is alleged, "it must be established not merely that the instruction is undesirable, erroneous, or even 'universally condemned,' but that it violated some right which was guaranteed to the defendant by the Fourteenth Amendment." *Davis*, 270 F.3d at 123 (quoting *Cupp v. Naughten*, 414 U.S. 141 (1973)). Moreover, in general, omissions or incomplete instructions are less likely to be prejudicial than actual misstatements of the law. *See Henderson v. Kibbe*, 431 U.S. 145, 155 (1977).

Because petitioner does not demonstrate how the given jury charge might have deprived him of a fair trial, this claim is denied.

**VI.     EXCESSIVE SENTENCE**

Petitioner claims his sentence is excessive and asks the Court to reduce it.  (Appellant's

Br. at 38.)  However, no federal constitutional issue exists when the sentence is within the range

prescribed by state law.  *White v. Keane*, 969 F.2d 1381, 1383 (2d Cir. 1992); *Underwood v.

Kelly*, 692 F. Supp. 146 (E.D.N.Y. 1988).  Petitioner acknowledges that his sentence was within

the legal limits.  (Appellant's Br. at 38.)  Thus, there is no federal issue, and petitioner's claim is

denied.

**VII.    INEFFECTIVE ASSISTANCE OF COUNSEL**

To reverse a conviction based on ineffective assistance of counsel, a petitioner must show

"that counsel's performance was deficient and . . . that the deficient performance prejudiced the

defense so as to deprive the defendant of a fair trial."  *Strickland v. Washington*, 466 U.S. 668,

669 (1984).  When evaluating whether counsel's performance was deficient, "[a] court must

indulge a strong presumption that counsel's conduct falls within the wide range of reasonable

professional assistance."  *Id.*  If a court determines that counsel was deficient, the standard for

the requisite showing of prejudice "requires the defendant to show that there is a reasonable

probability that, but for counsel's unprofessional errors, the result of the proceeding would have

been different.  A reasonable probability is a probability sufficient to undermine confidence in

the outcome."  *Id.*

Petitioner asserts that various actions by trial counsel denied him the effective assistance of

counsel.  All of petitioner's claims are without merit.

A.  Counsel's Failure to Investigate, Locate, and Present Potential Witnesses

First, petitioner claims that he has "become aware of potential witnesses and issues that

would have affected jury's evaluation and more than likely would have made a difference in the

27

jury's verdict if they would have been presented at trial." These witnesses include an individual who said he did not know if anybody was in the backseat of the car on the night of the murder, a witness who claimed he heard petitioner's co-defendant confess to sole responsibility for the crimes, and a gunshot residue expert.  (Appellant's *Pro Se* Supplemental Br. at 27-30.) Petitioner maintains that three witnesses would have testified absent counsel's ineffective assistance.

"Courts applying *Strickland* are especially deferential to defense attorneys' decisions concerning which witnesses to put before the jury" because it is usually "a question of trial strategy that [reviewing] courts are ill-suited to second-guess."  *Greiner v. Wells*, 417 F.3d 305, 323 (2d Cir. 2005).  As a result of this deference, failure to call a witness due to strategic considerations generally does not satisfy *Strickland*.  *U.S. v. Eyman*, 313 F.3d 741, 743 (2d Cir. 2002).  Here, however, no affidavit was submitted from trial counsel to justify any strategic rationale.

Nonetheless, ineffective assistance of counsel is especially unlikely to be imputed from the failure to call a witness in the absence of an affidavit or other admissible evidence that the proposed witness would have provided meaningful testimony:  "[A] petitioner does not show that he was prejudiced by trial counsel's alleged deficient performance merely by asserting that certain witnesses *might* have supplied relevant testimony; rather, he must state exactly what testimony they would have supplied and how such testimony would have changed the result." *Carr v. Senkowski*, No. 01 Civ. 689, 2007 WL 3124624, at *21 (W.D.N.Y. Oct. 23, 2007)) (emphasis in original).

Here, petitioner cites solely to his own affidavit submitted in connection with his state court claims, while failing to submit affidavits from the potential witnesses at issue.  *Carneglia v. United States*, No. 03 Civ. 6388 (ADS), 2006 WL 148908, at *4 (E.D.N.Y. Jan. 18, 2006)

(rejecting challenge because "petitioner has not provided affidavits from the potential witnesses nor any assurance they would have appeared at trial had counsel interviewed them"); *see also United States v. Vargas*, 920 F.2d 167, 170 (2d Cir. 1990) (finding that petitioner's affidavit, featuring allegations made in a "conclusory fashion," failed to demonstrate that ineffective assistance of counsel based on uncalled witness), *cert. denied*, 502 U.S. 826 (1991); *Muhammad v. Bennett*, 96 Civ. 8430, 1998 WL 214884 at *1 (S.D.N.Y. Apr. 29, 1998) (finding "petitioner's speculative claim about the testimony of an uncalled witness" to be insufficient for ineffective assistance).

While petitioner does point to three witnesses that he believes should have testified at trial, he has not overcome the "strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Id.* Petitioner does not "demonstrate the absence of strategic or legitimate explanations" for counsel's decision; "[a]bsent such a showing, it will be presumed that counsel acted in a competent manner and exercised professional judgment." *Mohamed v. Portuondo*, No. 97 Civ. 3735 (JBW), 2004 WL 884072, at *9 (E.D.N.Y. Mar. 11, 2004). The fact that the three witnesses at issue were on defense counsel's witness list, but he declined to call them to the stand, speaks also the fact that this does not constitute a simple case of lack of investigation or diligence by counsel, but rather that these choices constituted tactical decisions "that ordinarily do[] not constitute a basis for a claim of ineffective assistance of counsel." *United States v. Nersesian*, 824 F.2d 1294, 1321 (2d Cir. 1987); *see also Strickland*, 466 U.S. at 611; *Speringo v. McLaughlin*, 202 F. Supp. 2d 178, 193 (S.D.N.Y. 2002).

Even if the Court found that counsel was deficient, petitioner has not demonstrated the requisite prejudice; he has only alleged in a vague, conclusory manner that the witnesses "more than likely would have made a difference in the jury's verdict." (Appellant's *Pro Se*

Supplemental Br. at 27.)  In the context of an uncalled witness, courts have held that, "[t]o affirmatively prove prejudice, a petitioner ordinarily must show not only that the testimony of uncalled witnesses would have been favorable, *but also that those witnesses would have testified at trial.*"  *Croney v. Scully*, No. 86 Civ. 4335, 1988 WL 69766, at *2 (E.D.N.Y. June 13, 1988) (emphasis in original).  Petitioner falls short of that standard.

First, his argument that one witness, Nick Parse, would have testified that he did not know if anyone was in the backseat of Hambrite's car on the night of the murder is not only unsubstantiated by affidavit or other evidence, but is wholly consistent with Davis' trial testimony that petitioner was in the backseat.  (Trial Tr. at 481-84.)  As is clear from petitioner's own proffer, Parse would have testified only that he was unsure whether another individual was in the car, and not that petitioner was absent from the scene of the murder.    Second, petitioner's claim that Dr. Peter Deforest, a gunshot residue expert, would have testified that the gunshot residue test performed on petitioner yielded results consistent with, but not conclusively showing, gunshot residue, is likewise unsupported by affidavit or evidence, and is likewise wholly consistent with the prosecution's evidence.  (Appellant's *Pro Se* Supplemental Br. at 28-29; Trial Tr. at 671-72, 684, 691-93, 696, 700-02, 707-08.)  Detective Bruno, a witness for the prosecution, testified that the chemicals on petitioner's hand were consistent with gunshot residue but were not conclusively gunshot residue.  (*Id.* at 691-92, 696, 711.)  Last, petitioner maintains that Lappery Fore, who met petitioner's co-defendant in the Nassau County Correction Facility, would have testified that petitioner's co-defendant confessed to Fore that he acted alone and never mentioned petitioner.  (Appellant's *Pro Se* Supplemental Br. at 29.)  This overstates the substance of this purported testimony, as Fore allegedly stated that Badger did not mention petitioner, not that petitioner was not involved in the crime. Moreover, as with his other claims,

petitioner has failed to show how this evidence, if presented, would have changed the outcome of his trial.  Petitioner's "vague hope that another witness would have reached a different result" is simply insufficient to merit habeas corpus relief.  *Leaks v. United States*, 841 F. Supp. 536, 545 (S.D.N.Y. 1994); *see also Batchilly v. Nance*, No. 08 Civ. 7150, 2010 WL 1253921 at *39 (S.D.N.Y. Apr. 2, 2010).  This is particularly true in the face of strong prosecution evidence, including eyewitness testimony that petitioner was with the deceased on the night of his death, particles consistent with gunshot residue found on petitioner's hands, petitioner leaving the area after the murder, and petitioner forging a letter that would exculpate him – is strong, even if petitioner's desired witnesses had testified.

Given the strength of the prosecution's evidence, the limited and consistent nature of the purported testimony of these witnesses, the extremely deferential standard of reviewing defense counsel's decision regarding which witnesses to call, and petitioner's failure to demonstrate a reasonable probability that these witnesses would have altered the trial's outcome, petitioner's claim must fail.

B.  Counsel's Denial of Petitioner's Opportunity to Testify

Petitioner claims that his counsel "did not allow him to testify."  (Appellant's *Pro Se* Supplemental Br. at 27.)  He claims that he "made trial counsel aware that he wanted to testify in his own behalf," but "[t]rial counsel did not inform [petitioner] that he had a right to testify and failed to call him to the stand even after appellant made him aware that he wanted to testify." (*Id.* at 31.)

Without doubt, it is a defendant's decision whether to testify.  *Jones v. Barnes*, 463 U.S. 745, 751 (1983) ("[T]he accused has the ultimate authority to make certain fundamental decisions regarding the case, as to whether to plead guilty, waive a jury, testify in his or her own

behalf, or take an appeal."); *Brown v. Artuz*, 124 F.3d 73, 74 (2d Cir. 1997) ("We conclude that the decision whether a defendant should testify at trial is for the defendant to make, that trial counsel's duty of effective assistance includes the responsibility to advise the defendant concerning the exercise of this constitutional right.")  However, even if counsel failed in this regard, such error does not, in and of itself, establish that counsel was ineffective.  Rather, such error is subject to the same analysis applicable to any other claim of ineffective assistance of counsel, and requires that petitioner demonstrate that he was prejudiced by the alleged error.  *Id.* ("[T]he two-part test established in *Strickland v. Washington* . . . should be used to assess a defendant's claim that defense counsel rendered ineffective assistance by preventing him from testifying or at least failing to advise him concerning his right to testify.")  Petitioner fails to meet his burden in this regard.

Again, petitioner's allegations are based solely on his own affidavit, and that affidavit fails to show that counsel actually prevented him from testifying.  Nor does petitioner demonstrate that petitioner's failure to testify was not the result of strategy or concern that the testimony would be harmful to the defense.[4]  Most important, petitioner fails to show what he would have testified to, or that there exists a reasonable probability that the trial result would have been different had it not been for counsel's alleged error.  *Strickland*, 466 U.S. at 669 (Petitioner must demonstrate that counsel's "deficient performance prejudiced the defense so as to deprive the defendant of a fair trial.")  Thus, petitioner has not satisfied the second prong of the *Strickland* test.  As such, this aspect of petitioner's ineffective assistance claim fails.

---

[4] Indeed, there is a sound tactical reason for urging petitioner not to take the stand:  if petitioner had done so, he would have been subject to impeachment based on his prior felony conviction.  *See* Fed. R. Evid. 609(a)(1).

C.  Counsel's Failure to Present a Defense Requested by Petitioner

Petitioner claims that his trial counsel "did not present a requested defense," thereby "depriving him of effective assistance of counsel guaranteed by the Sixth Amendment." (Appellant's *Pro Se* Supplemental Br. at 27.)  However, petitioner fails to assert any desired defense that counsel failed to present.  A conclusory ineffective assistance of counsel claim, "which does not cite any evidence or arguments that counsel failed to raise, is insufficient to establish the ineffectiveness of counsel under the demanding *Strickland* standard."  *Brewer v. Lape*, No. 06 Civ. 10209 (SHS), 2010 WL 3565176, at *27 (S.D.N.Y. June 11, 2010); *see also Schulz v. Marshall*, 528 F. Supp. 2d 77, 93 n.11 (E.D.N.Y. 2007) (noting that counsel is not ineffective for failing to present witnesses where petitioner does not assert any particular witnesses counsel should have presented).  Without asserting any particular defense that counsel failed to present, it is impossible for petitioner to carry his burden with respect to either prong. The ineffective assistance of counsel claim requires showing that counsel's performance was deficient and, moreover, the second prong requires a court to determine that a particular deficiency had a reasonable probability of changing the outcome.  *See Strickland*, 466 U.S. at 690 (noting that "[t]he court must . . . determine whether, in light of all the circumstances, the *identified acts or omissions* were outside the wide range of professionally competent assistance") (emphasis added); *Ping v. Willingham*, 746 F. Supp. 2d 496, 500 (S.D.N.Y. 2010) ("Unless counsel entirely fails to present any meaningful defense, there must be a specific showing of prejudice.") (citing *United States v. Cronic*, 466 U.S. 648, 659, n.26 (1984)).   Additionally, there is no way to determine whether there was strategy behind counsel's decision not to present a defense if petitioner does not point to a particular deficiency.  If defense counsel made a

tactical decision not to employ a certain defense, that decision does not constitute ineffective assistance of counsel.  *See Greiner v. Wells*, 417 F.3d 305, 319 (2d Cir. 2005).

Since petitioner does not point to specific defenses that defense counsel should have raised, petitioner has not demonstrated that the Appellate Division's decision that the claim is meritless was "contrary to, or involved an unreasonable application of, clearly established Federal law" or that it "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding."  28 U.S.C. § 2254(d)(1)-(2).  Accordingly, this claim is denied.

D.  Counsel's Failure to Request Appropriate Jury Instructions

Petitioner claims that trial counsel "did not request appropriate jury instruction[s]," "depriving him of effective assistance of counsel guaranteed by the Sixth Amendment." (Appellant's *Pro Se* Supplemental Br. at 27.)  However, petitioner fails to assert any jury instructions that counsel failed to request or any jury instructions that counsel mistakenly requested.  *See, e.g.*, *Ramos v. United States*, Nos. 05 Civ. 4961 (SCR), 01 Cr. 217 (SCR), 2007 WL 3071185, at *5 (S.D.N.Y. Oct. 18, 2007) (denying an ineffective assistance of counsel claim for failure to request proper jury instructions because "[p]etitioner neglects to state which instructions form the basis of his claim"); s*ee also United States v. Sessa*, No. 92-CR-351(ARR), 2011 WL 256330 at *48 (E.D.N.Y. Jan. 25, 2011) (noting that a jury instruction claim would fail because it was too "vague and speculative to succeed"); *see also Brewer v. Lape*, No. 06 Civ. 10209 (SHS), 2010 WL 3565176, at *27 (S.D.N.Y. June 11, 2010) (holding that a conclusory ineffective assistance claim "is insufficient to establish the ineffectiveness of counsel under the demanding *Strickland* standard").  Since petitioner does not object to any particular jury instruction that was given or not given, he has not demonstrated that the Appellate Division's

34

decision that the claim is meritless was "contrary to, or involved an unreasonable application of, clearly established Federal law" or that it "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d)(1)-(2); *see Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991) ("[I]t is not the province of a federal habeas court to reexamine state-court determinations on state-law questions"). Accordingly, this claim is denied.

## VIII.   PETITIONER'S STATEMENTS

Petitioner claims that he did not receive *Miranda* warnings from either the Memphis Police Department, the Nassau County Homicide Squad, or Detective Brosnan of the Nassau County Police Department. (Appellant's *Pro Se* Supplemental Br. at 34.) He also claims that he was deprived of his right to counsel during interrogation. (Appellant's Br. at 36-37.)

### A.  Memphis Police Department

It is undisputed that the Memphis Police Department did not issue petitioner a *Miranda* warning. (Resp't's Aff. & Mem. of Law at 40.) However, the hearing court found that the police did not interrogate petitioner at that time but, rather, merely asked pedigree questions. (Hr'g Op. & Order at 9, Sep. 20, 2001.) That the police did not interrogate petitioner is a state court finding of fact; such findings of fact in a habeas corpus context are "presumed to be correct." 28 U.S.C. § 2254(e)(1). Furthermore, petitioner bears "the burden of rebutting the presumption of correctness by clear and convincing evidence." *Id.* Petitioner does not offer any evidence to rebut that presumption; thus, the hearing court's finding that the Memphis police did not interrogate stands. *See Sumner v. Mata*, 449 U.S. 539, 546-53 (1981).

Given the finding that petitioner was asked only pedigree questions by the Memphis police, a *Miranda* warning was not necessary. *United States v. Ferrara*, 990 F. Supp. 146, 154

(E.D.N.Y. 1998); *see Dickerson v. United States*, 530 U.S. 428, 432 (2000) ("*Miranda* and its progeny in this Court govern the admissibility of statements made during *custodial interrogation* in both state and federal courts.") (emphasis added).  Petitioner's claim that he is entitled to a new trial because the Memphis police did not give him a *Miranda* warning is therefore denied.

B.  Nassau County Homicide Squad

Petitioner claims that he did not receive *Miranda* warnings from the Nassau County Homicide Squad.  (Appellant's *Pro Se* Supplemental Br. at 34.)  However, the hearing court determined that Nassau County Detective William Brosnan read petitioner "his fourfold constitutional advisements from a 'rights' card' pursuant to *Miranda v. Arizona* . . . [and] defendant willingly spoke with the detectives."  (Hr'g Op. & Order at 12.)  Since petitioner offers no evidence to rebut the presumption of correctness, the hearing court's finding stands, and petitioner's claim is denied.  *See* 28 U.S.C. § 2254(e)(1); *Sumner*, 449 U.S. at 546-53.

C.  Detective Brosnan

Petitioner also claims that his telephone conversations with Detective Brosnan of the Nassau County Police Department "constituted the 'functional equivalent' of interrogation" because "[t]he statements were made at a time when police were seeking appellant with the specific intent to make an arrest" and, thus, the conversations "should have been preceded by *Miranda* warnings."  (Appellant's Br. at 37.)  Petitioner requests that the conversations be suppressed.  (*Id.*)

*Miranda* warnings are required only when a suspect is in custody.  *Rhode Island v. Innis*, 446 U.S. 291, 300-01 (1980) ("*Miranda* safeguards come into play whenever a person *in custody* is subjected to either express questioning or its functional equivalent.") (emphasis added).  Since petitioner was not in custody or its functional equivalent at the time of the telephone

36

conversation, *Miranda* warnings were not required.  *United States v. Leonard*, 817 F. Supp. 286, 293 (E.D.N.Y. 1992) (holding that a *Miranda* warning was not required when defendant had a telephone conversation with law enforcement because defendant was not "under formal arrest," and his movement was not restrained); *Oregon v. Mathiason*, 429 U.S. 492, 495 (1977) ("*Miranda* warnings are required only where there has been such a restriction on a person's freedom as to render him 'in custody.'").  This claim is accordingly denied.

D.  <u>Right to Counsel</u>

Petitioner claims that he had a state-imposed indelible right to counsel during his post-arrest conversation with police on September 15, 2000; he further argues that since he did not receive counsel, the statements he made during the trip back to Albany and during the interview should be suppressed.  (Appellant's Br. at 36-37.)  Petitioner's claim is based on state law.  The New York right to counsel may not be waived without an attorney present, while the federal right to counsel has no such restriction.  *People v. Samuels*, 400 N.E.2d 1344 (N.Y. 1980) (If "all that stands between the entry of counsel into the proceedings and nonrepresentation is the ministerial act of arraignment, there may be no waiver of the right to counsel unless an attorney is present.") (quoting *People v. Settles*, 46 N.Y.2d 154, 166 (N.Y. 1978)); *Adams v. United States ex rel. McCann*, 317 U.S. 269, 278 (1942) ("[T]he Constitution does not force a lawyer upon a defendant.  He may waive his Constitutional right to assistance of counsel if he knows what he is doing and his choice is made with eyes open.").  Since petitioner's claim is based solely on state law, it is not reviewable here.  *Estelle v. McGuire*, 502 U.S. 62 (1991) (noting that federal habeas courts do not "reexamine state-court determinations on state-law questions").  Petitioner's state-law right to counsel claim is accordingly denied.

## IX.     DENIAL OF REQUEST TO DISMISS A JUROR

Petitioner claims that Alternate Juror No. 1, Tracy Bourandas, who replaced Juror No. 3, was biased against the defense as a result of her "close personal relationship with a Bureau Chief Prosecutor who works in the Nassau County D.A.'s Office with "The People" (ADA Robert T. Hayden) who tried [petitioner's] case." (Appellant's *Pro Se* Supplemental Br. at 39.) Petitioner claims that this bias denied him his Fifth Amendment right to due process and his Sixth Amendment right to a fair trial. (*Id.* at 38.)

To prevail on this claim, petitioner would need to show actual bias. *Smith v. Phillips*, 455 U.S. 209, 216-17 (1982) ("[D]ue process does not require a new trial every time a juror has been placed in a potentially compromising situation . . . Due process means a jury capable and willing to decide the case solely on the evidence before it, and a trial judge ever watchful to prevent prejudicial occurrences and to determine the effect of such occurrences when they happen."). Petitioner only points to Bourandas' friendship with a prosecutor – one unrelated to the case – as a reason that she would be "more likely to be biased to the defense." (Appellant's *Pro Se* Supplemental Br. at 38.) Petitioner makes no showing of actual bias; he simply points to the possibility of bias, which is not sufficient to sustain this claim. *Knapp v. Leonardo*, 46 F.3d 170, 176 (2d Cir. 1995) ("Jury bias can be established only if a habeas petitioner demonstrates that prejudice is manifest."); *United States v. Garcia*, 936 F.2d 648, 653 (2d Cir. 1991) (noting that the possibility of bias is not sufficient reason to overturn the trial judge's determination that the juror should not be dismissed). Petitioner's insinuations are in stark contrast to Juror No. 1's statements during voir dire, in which she answered in the negative when the prosecutor asked "Is there any reason why you think you'd be less than fair and impartial if you sat here?" (Voir Dire Tr. 292-93.) They are certainly not enough to demonstrate that the Appellate Division's decision

38

that the claim is meritless was "contrary to, or involved an unreasonable application of, clearly established Federal law" or that it "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d)(1)-(2). Jury selection is "particularly within the province of the trial judge," and federal courts will not question that selection absent a showing of actual bias. *Ristaino v. Ross*, 424 U.S. 589, 594-95 (1976); *see also Skilling v. United States*, 130 S.Ct. 2896, 2917 (2010); *Smith*, 455 U.S. at 216-17. As such, this claim is denied.

## CONCLUSION

Accordingly, it is hereby ORDERED that Petitioner's habeas corpus petition is DENIED in its entirety, and his petition is DISMISSED. Petitioner's motion to appoint counsel (Doc. No. 77) is DENIED. A certificate of appealability shall not be issued. The Clerk of Court is directed to enter judgment dismissing this petition, send a copy of this Memorandum and Order to petitioner, and close the case.

SO ORDERED.

Dated: Brooklyn, New York
       September 1, 2011

*Roslynn R. Mauskopf*
_____
ROSLYNN R. MAUSKOPF
United States District Judge